UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ASHRAF HUSSAIN, on behalf of themselves and
all others similarly situated,

                              Plaintiffs,          Case No.: 14-cv-05924(SIL)

       -against-

BURTON AND DOYLE OF GREAT NECK LLC,
MARIO SBARRO and GENNARO SBARRO,

                              Defendants.
--------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF MARIO SBARRO


                           Respectfully submitted,


                           STUART M. STEINBERG P.C.
                           Stuart M. Steinberg, Esq.
                           2 Rodeo Drive
                           Edgewood, New York 11717
                           (631) 715-4160


                           BERGER, FISCHOFF & SHUMER LLP
                           6901 Jericho Turnpike Suite 230
                           Syosset, New York 11791
                           516-747-1136


                           Co-Counsel for Defendants
                           Burton and Doyle of Great Neck LLC,
                           Mario Sbarro and Gennaro Sbarro

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

FACTS ............................................................................................................... 1

    The Restaurant Is Not Owned By Mario Sbarro ........................................ 2

    There Is No Evidence of Any Involvement By
    Mario Sbarro In The Restaurant .................................................................. 3

    The Testimony and Sworn Statements of Management
    Support Mario Sbarro's Position ................................................................. 5

STANDARD ...................................................................................................... 7

ARGUMENT ..................................................................................................... 8

POINT I
    MARIO SBARRO IS NOT PLAINTIFFS' EMPLOYER

    A. Mario Sbarro Is Not An Employer Under
       The Second Circuit's Econmic Realities Test ..................................... 8

    B. Mario Sbarro's Insignificant Involvement
       In the Restaurant Is Insufficient to Impose Personal Liability ........... 13

CONCLUSION .................................................................................................. 17

APPENDIX A .................................................................................................... 18

i

# TABLE OF AUTHORITIES

## Federal Cases

*Berrezueta v. Royal Crown Pastry Shop, Inc.*, NO. 12-CV-4380,
2014 WL 3734489 at \*9 (E.D.N.Y. July 28, 2014)................................................9
*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) ..........................................7
*Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281 (E.D.N.Y. 2002)
*aff'd as modified*, 66 F.App'x 261 (2d Cir. 2003) .................................... 14-15
*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253 (S.D.N.Y. 2011)........14. 16
*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999); ..........................8, 10, 13
*Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490 (S.D.N.Y. 2015) ......................10
*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .................................8, 9, 10, 12, 14
*Kim v. Kim Gang, Inc.*, 2015 WL 2222438 (S.D.N.Y. March 19, 2015) ....................................10
*Lee v. Grand Sichuan Eastern (NY) Inc.*, United States District Court,
Southern District of New York, 12-CV-08652 (Netburn, M.J. January 17, 2014) .................15
*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) .............................7
*Nakahata v. New York Presbyterian Health Sys. Inc.*, 2012 U.S. Dist. Lexis
127824 (S.D.N.Y. Sept. 6, 2012)........................................................................ 8-9
*Sai Qin Chen v. East Market Restaurant, Inc.,* 2015 WL 5730014 (S.D.N.Y. 2015).................10
*Salinas v. Starjem Restaurant Corp.*, 123 F.Supp.3d 442 (S.D.N.Y. 2015)..........................14, 15
*Tracy v. NVR, Inc.*, 667 F.Supp.2d 244 (W.D.N.Y. 2009) .............................................9

## Federal Statutes

29 U.S.C. §203(d)...........................................................................................1, 8
Fed.R.Civ.P. 56(a) ...............................................................................................7

## State Statutes

N.Y. Lab. Law §§190(3), 651(6), .........................................................................1, 8

Defendant Mario Sbarro ("Sbarro") submits this Memorandum of Law in support of his motion for summary judgment. As there is no factual or legal basis for individual liability of Mario Sbarro, the motion should be granted.

## PRELIMINARY STATEMENT

Plaintiff asserts various wage claims under both the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) against defendant Burton and Doyle of Great Neck, LLC ("Burton & Doyle"), which operated a steakhouse in Great Neck, New York, and against two individual defendants including Mario Sbarro, who plaintiff claims is the principal of Burton & Doyle and therefore allegedly personally liable for the wage claims against the entity. Discovery is now complete and plaintiffs have absolutely no evidence to support their claim that Mr. Sbarro is an "employer" as defined by the applicable statutes, the FLSA and the NYLL, and pursuant to Second Circuit precedent. Instead, plaintiffs' sole support for this action against Mr. Sbarro is speculation, rumor and conjecture. Resultantly, summary judgment is warranted.

## FACTS

Plaintiffs were employed as servers and wait staff at the restaurant owned by defendant Burton and Doyle of Great Neck LLC ("Burton & Doyle") and operating as "Burton & Doyle" (hereinafter referred to as the "restaurant"). See, Declaration of Laurie Sayevich Horz, Esq. dated June 30, 2016 ("Horz Dec.") at Exhibit A at ¶7-8.

Plaintiff Ashraf Hussain ("Hussain") was employed as a server at Burton & Doyle from January 2013 to July 2014. *Id.* at ¶7. Hussain is the representative of the collective. *Id.* Donald Bartunek ("Bartunek") was a waiter at the restaurant. Horz Dec., Exhibit C at 15. Neither Hussain nor Bartunek were hired by defendant Mario Sbarro nor met with him or were interviewed by him prior to their hire. Horz Dec., Exhibit B at 21-22, 25; Exhibit C at 18. Hussain only met with the

1

restaurant's manager "Paul" during the interview and was hired during this first and only interview. Horz Dec., Exhibit B at 21-22.

### The Restaurant Is Not Owned By Mario Sbarro

The plaintiffs have failed to set forth any evidence to support their allegations in the Amended Complaint that Mario Sbarro was an owner of the restaurant. Indeed, plaintiff Bartunek admitted that he based his claim that Mr. Sbarro owned the restaurant upon hearsay statements made by restaurant managers. Horz Dec., Exhibit C at 140. Contrary to the plaintiffs' unsupported assumptions, Mario Sbarro does not own the restaurant. Instead, the Mario Sbarro Trust owns Burton & Doyle. Horz Dec. Exhibit D at 6.

Prior to Burton & Doyle's operation of a restaurant at the subject location, Sbarro, Inc. (a corporate entity with which Mr. Sbarro was formerly affiliated) operated a restaurant called Salute at such location. Horz Dec. Exhibit D at 11. Mr. Sbarro had no individual ownership in Salute. *Id.* Sbarro, Inc.'s interest in Salute was a one-third interest, and other non-parties owned the remaining interests. *Id.* at 16-17. Prior to the date of the allegations in the Complaint, the interest in Burton & Doyle (formerly Salute) were transferred to the Mario Sbarro (2006) Long Term Trust. *Id.*

Blue Ridge Bank and Trust Co. ("Blue Ridge") is the Independent Trustee of the Mario Sbarro (2006) Long Term Trust ("Trust"). Horz Dec. Exhibit H at ¶¶1-2. The Trust was established by Mario Sbarro as Settlor on June 30, 2006 – several years before the alleged acts that form the basis of plaintiffs' complaint. *Id.* at ¶2. The Trust owns all the Member Shares of the Mario Sbarro LLC, which in turn is the sole member of Burton and Doyle of Great Neck, LLC. *Id.* The terms of the Trust Agreement do not grant Mario Sbarro any control or operational authority over any businesses the Trust owns, either directly or through a subsidiary. *Id.* at ¶3. Mario Sbarro does not have any voting rights with respect to any stock or membership interest of any corporate entity

2

that the Trust owns. *Id.* at ¶4. Mario Sbarro does not exercise any dominion or control over the Trust and/or any of the Trust assets. *Id.* at ¶5. The Mario Sbarro Trust operated the restaurant for the benefit of the Sbarro family members who were beneficiaries of the Trust. Horz Dec., Exhibit D at 39.

Mario Sbarro testified that he did not get involved in the operations of the business of Burton & Doyle. Horz Dec., Exhibit D at 27. Mr. Sbarro testified that "when I sold Sbarro [Inc.], I retired from the restaurant business. . . and I wanted to hear nothing about it." Horz Dec., Exhibit D at 27. Although plaintiffs claim that Mario Sbarro's name is listed on the liquor license for the restaurant, it is noteworthy that the listing indicates that Mario Sbarro was a principal back in 1999, a clear carryover from when Sbarro, Inc. was a part owner of Burton & Doyle. See, Horz Dec. Exhibit J. Gennaro Sbarro, the other individual defendant named in this action, ran the restaurant and did not give Mario Sbarro reports about the restaurant or its revenues. Horz Dec., Exhibit E at 17, 217. After it was indicated to Mario Sbarro that the restaurant was operating at a loss, he recommended to Franklin Montgomery, Esq., the attorney for the Mario Sbarro Trust, that the restaurant be sold to pay creditors. Horz Dec., Exhibit D at 26, 63. Mr. Montgomery later advised Mr. Sbarro that the trustee approved the sale of the restaurant. Horz Dec., Exhibit D at 64. Only the restaurant's bank and creditors received the proceeds of the sale of the restaurant, approximately $2,500,000.00. Horz Dec., Exhibit D at 14-15.

## There Is No Evidence of Any Involvement By Mario Sbarro In The Restaurant

It is undisputed by the plaintiffs' own testimony that Mario Sbarro had no involvement in the operations of the restaurant or the employees' wages and working conditions. Thus, plaintiffs testified that they did not observe Mario Sbarro:

- o prepare the employee schedules for the restaurant; Horz Dec., Exhibit B at 42, 174-176; Exhibit C at 39-40, 145;

3

- o supervise the work of any employee; Horz Dec., Exhibit B at 166-167, 174-176;

- o terminate employment of any restaurant employees; Horz Dec., Exhibit B at 84-85, 174-176; Exhibit C at 142;

- o promote employees of the restaurant; Horz Dec., Exhibit B at 174-176;

- o reprimand or discipline an employee of the restaurant; Horz Dec., Exhibit B at 54, 84-85, 174-176; Exhibit C at 150;

- o pool the tips of the restaurant's employees; Horz Dec., Exhibit C at 150;

- o attend staff meetings; Horz Dec., Exhibit B at 171, 129-132, 145;

- o take any role in employee payroll matters; Horz Dec., Exhibit B at 174-176;

- o take any role in providing tip credit notices; Horz Dec., Exhibit B at 180-182;

- o take any role in maintaining the restaurant's records; Horz Dec., Exhibit B at 180-182; Exhibit C at 153-155;

- o supervise the operation of the restaurant; Horz Dec., Exhibit C at 145;

- o take reservations, greet, serve, seat or place food orders for patrons of the restaurant; Horz Dec., Exhibit B at 167-168; Exhibit C at 145, 156; and

- o pay the restaurant's bills, provide financing for the restaurant, set or design menus, or order food for the restaurant; Horz Dec., Exhibit C at 153-155.

The plaintiffs acknowledge that they did not raise any issue they had with their working conditions or pay with Mario Sbarro, including the alleged: lack of compensation for wages and tips earned (Horz Dec., Exhibit B at 51); issues concerning tip credits (Horz Dec., Exhibit B at 82-83); issues concerning the meal program (Horz Dec., Exhibit B at 138); requirements of the wait staff to make up tips if tips for the shift were less than eighteen (18%) percent of sales (Horz Dec. Exhibit B at 150-151); issues concerning the "shaving" of hours (Horz Dec. Exhibit C at 10, 33-34, 122); or issues concerning the sharing of tips with sushi chefs (Horz Dec. Exhibit C at 147-48).

Admittedly the plaintiffs made any complaints they had to the managers of the restaurant. Horz Dec., Exhibit B at 42, 45-46, 49-52, 172. Plaintiffs did not characterize Mario Sbarro as a manager of the restaurant. Horz Dec., Exhibit B at 45. Plaintiffs have no knowledge as to whether Mario Sbarro had any knowledge of any alleged illegal or unlawful conduct occurring at the restaurant. Horz Dec., Exhibit B at 179-180.

Indeed, the sole connection the plaintiffs observed between Mario Sbarro and the restaurant was when he frequented the restaurant as a patron and attendee at parties held there. Horz Dec., Exhibit B at 162.

**The Testimony and Sworn Statements of Management Support Mario Sbarro's Position**

The testimony of Gennaro "Jerry" Sbarro, who oversaw the operations of the restaurant, as well as the sworn statements of two of the restaurant's managers during the relevant time period confirm that Mario Sbarro was not an employer. Gennaro Sbarro was in charge of hiring and firing of the staff and operated the restaurant "independently" and reported to "no one". Horz Dec. Exhibit E at 20, 29. The managers of the restaurant would make up the staff schedules. Horz Dec. Exhibit E at 55; Exhibit F at ¶11; Exhibit G at ¶5.

Paul Vaccese, referred to by the plaintiffs as "Paul", was a general manager at the restaurant from 2009 through 2013. Horz Dec. Exhibit F at ¶1. Mr. Vaccese was hired by Gennaro Sbarro and reported solely to Gennaro Sbarro during his employment. *Id.* at ¶2. Manager Carla Barnett was employed by the restaurant from approximately January 2008 through June 2014. Horz Dec. Exhibit G at ¶1. Ms. Barnett was hired by former restaurant manager Chris Landrin. Horz Dec. Exhibit G at ¶2. She was later promoted to Banquet Manager and held that position through the end of her employment at the restaurant. Horz Dec. Exhibit G at ¶2. Ms. Barnett, like Mr. Vaccese, reported solely to Gennaro Sbarro. Horz Dec. Exhibit G at ¶4.

Any discussions Mr. Vaccese had concerning operations of the restaurant, compensation or wages, disciplinary matters, hiring and firing, promotions, work schedules and any other issues relating to the business of the restaurant were with Gennaro Sbarro or persons other than Mario Sbarro. Horz Dec. Exhibit G at ¶3. Mr. Vaccese never discussed any issues concerning restaurant operations with Mario Sbarro. Horz Dec. Exhibit G at ¶3. Mario Sbarro never gave Mr. Vaccese any work related instructions or directions, nor did these individuals have any discussions or interactions relating to the restaurant. Horz Dec. Exhibit G at ¶¶3-4.

Both Mr. Vaccese and Ms. Barnett confirmed that, during their employment at the restaurant, Mario Sbarro:

- did not hire or fire employees; Horz Dec. Exhibit F at ¶5; Exhibit G at ¶8;

- did not supervise managers or employees of the restaurant; Horz Dec. Exhibit F at ¶6; Exhibit G at ¶¶3, 5;

- did not have the managers report to him; Horz Dec. Exhibit F at ¶6; Exhibit G at ¶3;

- did not have any role in the compensation of employees or managers; Horz Dec. Exhibit F at ¶8; Exhibit G at ¶¶9, 12;

- did not have access to employees' time records; Horz Dec. Exhibit F at ¶8; Exhibit G at ¶9

- had no ability to adjust or determine the number of hours for which an employee would be paid; Horz Dec. Exhibit F at ¶8; Exhibit G at ¶9;

- did not announce or enforce restaurant policies; Horz Dec. Exhibit F at ¶9; Exhibit G at ¶10;

- did not have any influence or involvement in the collection or distribution of tips, catering gratuities or service charges; Horz Dec. Exhibit F at ¶10; Exhibit G at ¶11;

- did not have any involvement in the deduction of credit card fees from tip amounts; Horz Dec. Exhibit F at ¶10; Exhibit G at ¶11;

- did not make employee schedules; Horz Dec. Exhibit F at ¶11; Exhibit G at ¶¶5, 13;

6

- did not determine work flow for the restaurant; Horz Dec. Exhibit F at ¶12; Exhibit G at ¶14;

- did not have any involvement in banquets or other events at the restaurant other than as a guest; Horz Dec. Exhibit F at ¶13; Exhibit G at ¶¶13-14;

- did not attend staff meetings nor was his name mentioned during such meetings; Horz Dec. Exhibit F at ¶14; Exhibit G at ¶15;

- did not have any involvement in catering events at the restaurant such as collection of deposits or balances, determining the amount charged for events, scheduling of employees to work the events, determining the menu for events, determining the compensation of employees working the events; Horz Dec. Exhibit G at ¶6; and

- had no role in the operations of the restaurant; Horz Dec. Exhibit F at ¶15; Exhibit G at ¶3.

Both Mr. Vaccese and Ms. Barnett only observed Mario Sbarro at the restaurant as a patron. Horz Dec. Exhibit F at ¶7, Exhibit G at ¶3.

## STANDARD

Summary judgment is appropriate where, as here, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A fact is material "when it might affect the outcome of the suit under governing law" and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). While the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, when such burden is met, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations and citations omitted).

7

## ARGUMENT

## POINT I

## MARIO SBARRO IS NOT PLAINTIFFS' EMPLOYER

### A. Mario Sbarro Is Not an Employer Under
### The Second Circuit's Economic Realities Test

In order to determine whether a defendant is an employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(d) and/or the New York Labor Law ("NYLL"), N.Y. Lab. Law §§190(3), 651(6), the Second Circuit applies the "economic realities test". This test examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013). In determining whether an individual is an employer, "a court should focus on whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *RSR*, 172 F.3d at 139 (internal citations omitted).

A plaintiff who claims that a defendant is an "employer" must demonstrate that such individual had "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel or compensation". *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature and conditions of the employees' employment." *Id.* at 110. Thus, it is insufficient to merely allege unsupported, conclusory allegations that an individual is an employer to sustain personal liability under FLSA and NYLL. *Nakahata v. New York Presbyterian Health Sys. Inc.*, 2012 U.S. Dist. Lexis 127824 at *36-39 (S.D.N.Y. Sept. 6, 2012) (allegations of individuals' alleged "operational

8

control" and "employment decisions" without any factual support inadequate to render them "employers" under FSLA or NYLL); *Tracy v. NVR, Inc.*, 667 F.Supp.2d 244, 247 (W.D.N.Y. 2009) (bare allegations of an individual's control over plaintiffs based solely on job title and presumed duties are insufficient).

Moreover, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees." *Berrezueta v. Royal Crown Pastry Shop, Inc.*, NO. 12-CV-4380, 2014 WL 3734489 at *9 (E.D.N.Y. July 28, 2014) (quoting *Irizarry*, 722 F.3d at 111).  Thus, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status. Instead, to be an 'employer', an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109.

Based upon the evidence adduced during discovery, there can be no serious question as to whether Mario Sbarro is an "employer" under the governing standard.  He is not.  The Amended Complaint only contains conclusory allegations with respect to Mr. Sbarro's alleged involvement in the restaurant's operations, all of which have been contradicted by evidence exchanged during discovery in this action.  The plaintiffs solely support their claims against Mr. Sbarro upon supposition, rumors and hearsay – none of which are sufficient to defeat the instant motion for summary judgment. More significantly, and case-dispositive, however, are plaintiffs' own admissions in their depositions that Mr. Sbarro did not take any acts that are well-established as indicia of the role of employer.  Thus, plaintiffs have admitted that Mario Sbarro did not: hire or fire employees, including but not limited to the plaintiffs[1]; supervise or control the work schedules

---

[1] See Horz Dec. Exhibit B, at 21-22, 165-166 and Exhibit C, at 18.

and conditions of the Burton & Doyle employees[2]; set plaintiffs' and other employees' rate of pay[3]; or maintain employment records[4]. The lack of evidence on these basic requirements needed to hold an individual liable as an employer mandates dismissal. *RSR,* 172 F.3d 132. Indeed, there is no evidence at all that Mario Sbarro hired plaintiffs, supervised plaintiffs, trained plaintiffs, or determined plaintiffs rate of pay demonstrating that there is no material issue of fact necessitating a trial as to Mr. Sbarro's purported role as an employer.

The leading cases in the Second Circuit in which individual liability was imposed under FLSA and the Labor Law "ordinarily involve allegations that an individual had unilateral control over the material aspects of the conditions of employment and was, therefore, an employer within the meaning of the FLSA and the Labor Law. *E.g. Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2012); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999); *Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490 (S.D.N.Y. 2015) (Buchwald, D.J.); *Kim v. Kim Gang, Inc.*, *supra*, 2015 WL 2222438." *Sai Qin Chen v. East Market Restaurant, Inc.,* 2015 WL 5730014 (S.D.N.Y. 2015). In the instant case there is no material issue of fact as to whether Mario Sbarro had any control, let alone unilateral control, over material aspects of plaintiffs' employment. Indeed, there is no evidence that Mario Sbarro had any involvement at all in the restaurant, let alone that he hired or fired any employees of the restaurant; there is no evidence that he supervised or controlled employee work schedules or conditions of employment of the plaintiffs or any other employees; there is no evidence that he determined the rate of pay of the plaintiffs or method of payment; there is no evidence that he maintained employment records or any evidence at all of Mario Sbarro's involvement or knowledge of any facts as alleged in the Amended Complaint by

---

[2] See Horz Dec. Exhibit B at 42, 166-67, 174-76, and Exhibit C at 39-40, 142, 145, 150.
[3] See Horz Dec. Exhibit B at 45-46, 49-50, 51-52, 174-76 and Exhibit C at 150, 156,
[4] See Horz Dec. Exhibit B at 42, 180-82, and Exhibit C at 39-40, 145, 153-55.

Plaintiffs. Instead, the evidence reflects and the plaintiffs do not dispute that these tasks, authority and power were held by Gennaro Sbarro and the restaurant management.[5] This is confirmed by Paul Vaccese and Carla Barnett, third party-independent witnesses.[6] In sum, there is no evidence that Mario Sbarro had control over any aspect of the restaurant other than the menu items he ordered while dining as a patron. The complete lack of any evidence that Mario Sbarro played any role in the working conditions of the plaintiffs as employees mandates dismissal of the FLSA and NYLL claims against him.

Furthermore, the plaintiffs' claims that Mario Sbarro hired managers Paul Vaccese and Carla Barnett are expressly contradicted by these individuals' own sworn statements, in which they deny that Mr. Sbarro hired them and identify other individuals as the persons responsible for their employment with the restaurant.[7] This contradiction in and of itself cast grave doubts as to the credibility of Plaintiff's testimony and claims. Vaccese and Barnett's sworn statements, as well as the testimony of the plaintiffs, Gennaro Sbarro[8], and Mario Sbarro[9], confirm that Mario Sbarro's sole role was a patron of the restaurant, and nothing else. Additionally, the affidavit of the Trustee of the Mario Sbarro Trust[10] confirms that Mario Sbarro did not have the authority or power to make any decisions relating to the restaurant, including but not limited to the decision to sell it. Furthermore, the fact that Mario Sbarro was listed on a dated website as a principal of the corporate entity on the liquor license is of no moment nor does it demonstrate that Mario Sbarro had any role in the day-to-day supervision of the employees, their schedule or their pay. See,

---

[5] See Horz Dec. Exhibit B at 42, 45-46, 49-50, 51-52.
[6] See Horz Dec. Exhibits F and G.
[7] See Horz Dec. Exhibit F at ¶2, Exhibit G at ¶¶2, 3.
[8] See Horz Dec. Exhibit E at 17, 26, 29, 217.
[9] See Horz Dec. Exhibit D at 27.
[10] See Horz Dec. Exhibit H.

*Irizarry*, 722 F.3d at 109, 110 (requiring proof the person exercised control over matters directly pertaining to the nature and condition of employment for personal liability to attach). Noteworthy is that the website indicates Mario Sbarro was a principal back in 1999, a clear carryover from when Sbarro, Inc. was a part owner of Burton & Doyle.[11]

Plaintiffs' failure to bring forth any facts or evidence to support their claims against Mr. Sbarro – specific as to the basis of his "power" to hire and fire, or stop illegal pay practices – is fatal to their claims.   Moreover, while plaintiffs allege in the Amended Complaint that Mario Sbarro supervised the employees of Burton & Doyle, the pleadings and the plaintiffs' own testimony are devoid of any specific act of supervision. Nor do the plaintiffs allege Mario Sbarro's role – if any – in the specific conduct complained of in the Amended Complaint; by way of example, the pleadings and evidence are devoid of any proof that Mario Sbarro initiated, implemented or participated in the alleged tip pooling that plaintiffs complain of, or that he supervised, directed or implemented a policy that sushi chefs should share in the servers' tips; or that he reviewed the employees' time sheets and shaved off hours or declined to pay employees all of their tips or for overtime or spread of pay hours. It is clear that Mario Sbarro is named in this action for one reason, and one reason only – because plaintiffs believe he is a "deep pocket".

The complete lack of evidence of any acts by Mario Sbarro concerning the plaintiffs' hiring and firing, conditions of employment, rate of pay, or maintenance of employment records mandates dismissal of all of the claims against him.  Moreover, the complete lack of any evidence of any involvement at all by Mr. Sbarro, let alone operational control over the employees or of the restaurant, mandates dismissal. Because the plaintiffs cannot set forth any evidence to support a

---

[11] See Horz Dec. Exhibit J.

finding of personal liability against Mario Sbarro under the Second Circuit economic realities test, summary judgment must be granted.

### B. Mario Sbarro's Insignificant Involvement In the Restaurant Is Insufficient to Impose Personal Liability

In addition to the plaintiffs' inability to set forth any material fact requiring a trial as to whether Mario Sbarro was an employer under the FLSA, NYLL and the Second Circuit precedent, the limited contacts and involvement Mario Sbarro had with the restaurant are insufficient to give rise to any personal liability.   As discussed in Point A above, in determining whether an individual is an employer, "a court should focus on whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *RSR,* 172 F.3d at 139 (internal citations omitted).   The undisputed evidence shows that Mr. Sbarro's involvement was limited as follows: he was a patron of the restaurant, he visited the restaurant on occasion, his name is on the liquor license for the restaurant which carried over from prior ownership of the restaurant under a different corporation (predating plaintiffs' hiring), he is the settlor of a trust which owns the corporate entity that in turn owns the restaurant. Although defendants demanded throughout discovery proof from the plaintiffs that Mario Sbarro had control over the employees, their wages or working conditions, plaintiffs failed to produce any documentary evidence to support the same, or any person with firsthand knowledge to testify to such facts.[12] Plaintiffs have had ample time to marshal and present any evidence to support a claim against Mario Sbarro – and failed to do so.   Summary judgment has been granted to individual defendants sued under FLSA and NYLL who had much greater involvement qualitatively in a restaurant's operations than the undisputed minimal involvement by Mario Sbarro.

---

[12] See Horz Dec. ¶11 and related exhibits.

Thus, in *Salinas v. Starjem Restaurant Corp.*, 123 F.Supp.3d 442 (S.D.N.Y. 2015), plaintiffs, employees of a restaurant, brought an action under FLSA and NYLL for wage and hour claims similar to the instant matter.  Plaintiffs sought recovery against the corporation that owned the restaurant as well as two individual defendants, Marion Scotto and Anthony Scotto.  Ms. Scotto was the chief executive officer, president and majority shareholder of the corporation that owned the restaurant.  Ms. Scotto (unlike Mario Sbarro) was typically present at the restaurant on a daily basis, gave directions to employees, ran the front of the house operations of the restaurant, signed employees' paychecks as a second signatory and was described on the restaurant's website as "The Boss".  *Id.* at 464.  Ms. Scotto, like Mario Sbarro, had no involvement in the hiring and firing of employees, did not supervise or control employees' work schedules or conditions, had no role in determining employees' rate of pay or method of payment and did not maintain employee records. *Id.*

The District Court, in applying the test articulated in *Irizarry* and its progeny, held that Marion Scotto's role in the restaurant was insufficient to rise to the level to impose individual liability.  There, the court confirmed again that ownership or a stake in the company alone is insufficient to establish that an individual is an "employer" under the FLSA, NYLL and *Irizarry.* The court recognized that the tasks performed by Marion Scotto did not demonstrate that she held any authority over the employees, their pay or working conditions.  Furthermore, like the plaintiffs in the instant case, the court held that the fact that the plaintiffs or employees believed Marion Scotto was the boss does not make her an employer under the relevant statutes or Second Circuit precedent.  *Id.* (citing *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 314 (S.D.N.Y. 2011)(explaining that plaintiff's "perception that [defendant] is an 'owner' does not make him an employer"); *Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281, 291 (E.D.N.Y. 2002) *aff'd as modified*, 66

F.App'x 261 (2d Cir. 2003)(summary order)(finding testimony that "most [employees] thought [defendant] was a 'boss' when asked" to be "insufficient to support a definition of employer under the economic realities test")).  Clearly Mr. Sbarro's involvement in the operations of the subject restaurant are non-existent as compared to Ms. Scotto's in *Salinas*, and by reason thereof summary judgment is warranted.

. Similarly, in *Lee v. Grand Sichuan Eastern (NY) Inc.*, United States District Court, Southern District of New York, 12-CV-08652 (Netburn, M.J. January 17, 2014) (copy of unreported decision annexed hereto at Appendix A) the defendant, Wang, was an individual who was mistakenly placed on the subject restaurant's liquor license which was owned by Wang's wife and sisters-in-law. It was undisputed that Wang had no ownership interest in the restaurant, nor the ability to hire or fire employees, supervise or control work schedules or conditions, set wages or maintain employment records for the subject restaurant. Although Wang admitted that he provided advice and guidance to his wife based upon his experience in operating his own restaurants, the court found, based upon this undisputed evidence, that "no reasonable jury could find that any of the . . . factors indicate that Wang was [plaintiff's] employer under FLSA and NYLL definitions." *Id.* at 17.  The court likewise concluded that the fact that Wang was listed on the restaurant's liquor license as its principal and guarantor was insufficient to demonstrate the quality of contacts to impose personal liability, and that this status was "plainly insufficient to show that Wang actually or constructively knew that [plaintiff] worked overtime hours at the . . . restaurant, as would be required to impose FLSA liability." *Id.* at 18. Likewise, the fact that Mario Sbarro was listed on the restaurant's liquor license alone is insufficient to support plaintiffs' claim that he was their employer.  Indeed, plaintiffs have provided no evidence that Mr. Sbarro was

15

aware of, involved with or able to remedy any of the wage and hour issues that the plaintiffs complain of.

Likewise, in *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253 (S.D.N.Y. 2011) summary judgment was granted to individuals who were involved in a restaurant's ownership but did not undertake acts that arose to the level of an "employer" under FLSA and NYLL. In *Copantitla*, the District Court found that an individual who held an ownership interest in a restaurant was not liable for wage and hour claims where the individual only made occasional recommendations on hiring and operations, and had no other role with respect to hiring and firing, work schedules, employee compensation or maintaining records. *Id.* at 309-310. The court held that while the individual defendant visited the restaurant weekly, it was, like Mr. Sbarro, "as a patron". *Id.* at 310. The court further held that the defendant's status as sole shareholder and president of the corporation that owned the restaurant was insufficient to impose personal liability, holding that it is the degree of operational control a shareholder exercises over the corporation's functions, and not the status as a shareholder, that is determinative. *Id.* at 311 (citations omitted).

In sum, the plaintiffs have not, and cannot, meet their burden to impose liability upon Mario Sbarro. The evidence demonstrates without contradiction that Mario Sbarro did not exercise or have the ability to exercise any control over the finances, operations or general business affairs of the restaurant, let alone any involvement in the plaintiffs' wages and terms and conditions of employment. He was not, legally or practically, plaintiffs' employer.

## CONCLUSION

The plaintiff's attempt to foist personal liability against Mario Sbarro lacks any basis in law or fact.  The plaintiffs have not, and cannot, present any evidence that Mario Sbarro exercised the control over the restaurant and its employees that is required for personal liability under the FSLA and NYLL.  As a result, Mario Sbarro's motion for summary judgment must be granted.

Dated:        Syosset, New York
              June 30, 2016

                              BERGER, FISCHOFF & SHUMER, LLP

                       By:    _____
                              Laurie Sayevich Horz, Esq. (LSH-3183)
                              6901 Jericho Turnpike Suite 230
                              Syosset, New York 11791
                              (516) 747-1136
                              Lsayevich@bfslawfirm.com


                              STUART M. STEINBERG P.C.
                              Stuart M. Steinberg, Esq.
                              Sharon Simon, Esq.
                              2 Rodeo Drive
                              Edgewood, New York 11717
                              (631) 715-4160
                              ssimon@steinbergpc.net


                              Co-Counsel for Defendants
                              Burton and Doyle of Great Neck LLC,
                              Mario Sbarro and Gennaro Sbarro