UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ASHRAF HUSSAIN, on behalf of himself and
others similarly situated,

         Plaintiff,     **ORDER**
                  14-CV-5924 (SIL)
 -against-

BURTON AND DOYLE OF GREAT NECK,
LLC, MARIO SBARRO, and GENNARO SBARRO,

         Defendants.
------------------------------------------------------------------------X

**LOCKE, Magistrate Judge:**

  Presently before the Court in this wage and hour litigation is Plaintiff Ashraf Hussain's ("Plaintiff" or "Hussain") motion to compel Defendant Mario Sbarro ("Sbarro") to produce the Mario Sbarro Long Term Trust Agreement (the "Trust Agreement") in its entirety. *See* Docket Entry ("DE") [97]. Sbarro and non-party Franklin Montgomery, Esq., ("Montgomery"), oppose Plaintiff's motion. *See* DE [98], [99]. For the reasons set forth herein, the motion is granted.

**I. BACKGROUND**

 **A. <u>Relevant Facts</u>**

  By way of Complaint dated October 9, 2014, Hussain commenced this collective action, on behalf of himself and all others similarly situated,[1] against 661 Northern Blvd., LLC d/b/a Burton & Doyle Steakhouse, ("661 Northern Blvd."), Burton and Doyle of Great Neck LLC ("Burton & Doyle"), Mario Sbarro, Joseph Zangri, and Bert E. Brodsky (collectively

---

[1] Pursuant to a September 9, 2016 Stipulation, this action was certified as a collective action under 29 U.S.C. § 216(b). *See* DE [104]. To date, twenty-nine former Burton & Doyle employees have elected to become plaintiffs. *Id.* at ¶ 5.

1

"Defendants"),[2] alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq. See* DE [1]. On November 17, 2015, Plaintiff filed an Amended Complaint, in which he named Gennaro Sbarro as a defendant and added allegations in support of his claim that Mario Sbarro was his employer for purposes of individual liability pursuant to the applicable statutes. *See* DE [83]. Plaintiff alleges, among other things, that he worked as a server at Burton & Doyle from January 2013 until July 2014, but that he did not receive statutorily mandated overtime wages for hours worked in excess of forty in a given week. *See* Am. Compl. ¶¶ 7, 65-70. According to Hussain, "[a]s part of their regular business practices, defendants have intentionally, willfully, and repeatedly harmed plaintiff . . . by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL." *Id.* at ¶ 42. Relevant for purposes of the instant motion, Plaintiff further alleges that "Defendant Mario Sbarro was an owner of Burton and Doyle's of Great Neck LLC . . . ." *Id.* at ¶ 10. According to Hussain, Sbarro "exercised sufficient control over Burton & Doyle's operations to be considered Plaintiff's employer under the FLSA and NYLL, and established and exercised authority regarding the pay practices at Burton & Doyle's." *Id.*

In Hussain's June 23, 2015 First Request for the Production of Documents to all Defendants ("Document Demand"), Plaintiff asked Defendants to produce: (i) "documents sufficient to show the ownership and/or control of Burton and Doyle of Great Neck LLC"; and (ii) "all documents concerning Mario Sbarro's ownership interest, if any, in Burton and Doyle." *See* Document Demand, DE [97-1] at 7. In Defendants' response to Hussain's Document Demand, Defendants produced, among other things, seven pages of the Trust Agreement. *See* Plaintiff's Letter in Support of Motion to Compel ("Pl.'s Mtn. to Compel"), DE [97], at 1. However, based

---

[2] Following Plaintiff's acceptance of an offer of judgment pursuant to Fed. R. Civ. P. 68, Defendants 661 Northern Blvd., Joseph Zangri, and Bert E. Brodsky were dismissed from this action. *See* DE [23], [37].

2

on the "pagination on the last page produced, the Trust Agreement appears to be at least 37 pages." *Id.* According to Plaintiff, at Sbarro's deposition, Sbarro testified "that inquiries regarding the Trust should be made to his estates attorney, Franklin Montgomery." *Id.* Accordingly, on May 13, 2016, Plaintiff served a subpoena on Montgomery seeking "documents relevant to the Mario Sbarro Trust and other entities that controlled Burton and Doyle of Great Neck, LLC." *Id.* at 1-2. Thereafter, on May 10, 2016, Plaintiff and Montgomery entered into a Protective Order Stipulation (the "Protective Order"), which provides in relevant part that "Mr. Montgomery cannot provide the Mario Sbarro Long Term Trust and its member share purchase agreement as it would be in violation of the attorney–client privilege and the privilege is not waivable by Mr. Montgomery." *See* Protective Order, DE [97-4], ¶ 7. According to Hussain, "[b]ased on that representation, plaintiff[] did not pursue the matter further." *See* Pl.'s Mem. at 2.

On June 30, 2016, Defendants served a motion for summary judgment seeking dismissal of Plaintiff's claims against Sbarro. *Id.*; *see also* Defendants' Motion for Summary Judgment, DE [100], ("Def. Mtn. for Summ. J."). In support of their motion, Defendants rely in part on an affidavit from Dottie Jones, Assistant Vice President and Trust Officer of Blue Ridge Bank and Trust Co. ("Blue Ridge"), trustee for the Mario Sbarro Long Term Trust (the "Trust"), and the testimony of Mario Sbarro concerning the establishment of the Trust, but not the Trust Agreement itself. *See* Def. Mtn. for Summ. J. at 2-3. In their statement of facts, Defendants assert that the Trust "was established by Mario Sbarro as Settlor…several years before the alleged acts that form the basis of plaintiffs' complaint" and go on to note that "[t]he terms of the Trust Agreement do not grant Mario Sbarro any control or operational authority over any businesses the Trust owns, either directly or through a subsidiary." *See* Def. Mtn. for Summ. J. at 2. Defendants further clarify their position stating that Sbarro "does not have any voting rights with respect to any stock or membership interests of any

3

corporate entity that the Trust owns…[and] does not exercise any dominion or control over the Trust and/or any of the Trust assets." *Id.* at 2-3.

### B. The Instant Motion

On July 19, 2016, Plaintiff filed the instant motion seeking an Order compelling disclosure of the Trust Agreement in its entirety. *See* Plaintiff's Motion to Compel ("Pl. Mtn. to Compel"), DE [97]. Plaintiff characterizes Jones's affidavit as providing "detailed and favorable testimony about the contents of the Mario Sbarro Long Term Trust." *See id.* at 2. Additionally, according to Hussain, Defendants' reliance on that testimony to support their position that "Mario Sbarro is not plaintiffs' employer because the Trust Agreement does not grant him operational control over the restaurant" makes the Trust Agreement "the keystone" of Defendants' motion. *Id.* at 2-3. Therefore, "Dottie Jones' [*sic*] testimony as to the Trust Agreement and Defendants' reliance on the Trust Agreement in their motion, waives any privilege attached to the document." *Id.* at 3. Hussain further argues that "Defendants here are using the privilege as a sword and a shield, and it is unfair to allow a party to assert a position meanwhile using privilege as a shield to prevent the opposition from exploring the validity of that position." *Id.*

In opposition, Sbarro argues that the instant motion is untimely, and that "Plaintiffs' belated quest for the Trust document, now that they have had the opportunity to review the summary judgment motion, is merely a fishing expedition and a desperate attempt to avoid the dismissal of Mario Sbarro from this case." *See* Defendants' Letter in Opposition to Plaintiff's Motion to Compel, DE [98], at 2. Sbarro further claims that he is "not in possession of the complete Trust Agreement, nor does [he] have the authority to compel its production from the Trustee." *Id.* at 1. According to Montgomery, "the Trust can maintain its privilege without creating unfairness to the plaintiff." *See* Franklin Montgomery Letter in Opposition to Plaintiff's Motion to Compel, DE

4

[99], at 2. Specifically, Montgomery contends that, "[w]hile Mr. Sbarro's ownership is an issue of the case, the Trust is not the only document that can prove such contention, as the trustee's affidavit has stated same." *Id.* Montgomery also maintains that he is not permitted to disclose the Trust Agreement because, his client, Sbarro has not affirmatively waived that privilege. *Id.*

## II. DISCUSSION

### A. Applicability of Rule 56

In light of the procedural posture and the relief sought, the Court analyzes Plaintiff's motion under Fed. R. Civ. P. 56(d). In the context of a motion for summary judgment, Rule 56(d) permits the Court to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order" if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Although Plaintiff styled the instant motion as a motion to compel, it was filed after and in opposition to Defendants' Motion for Summary Judgment. *See* Pl. Mtn. to Compel, Def. Mtn. for Summ. J. Furthermore, Hussain explains the context of his motion, "Had plaintiff[] known that defendants would rely on the Trust in support of its [*sic*] motion [for summary judgment], plaintiff[] would have sought its production at an earlier date." *See* Pl.'s Mtn. to Compel at 3. Similarly, in Plaintiff's Rule 56.1 Counter-Statement of Undisputed Material Facts ("Pl.'s 56.1 Stmt.") in opposition to Sbarro's motion for summary judgment, Plaintiff claims that "[t]he Trust Agreement has not been provided to Plaintiff[] therefore any reference to the contents of the Trust Agreement in these facts is wholly improper." *See* Pl.'s 56.1 Stmt., DE [102-16], ¶¶ 119-21. Accordingly, the Court analyzes Plaintiff's arguments pursuant to Fed. R. Civ. P. 56(d) as a request to defer consideration of Defendants'

motion for summary judgment until after additional discovery regarding the Trust Agreement has been ordered.

## B. <u>Application of the Affidavit/Declaration Requirement</u>

Under Rule 56(d), Plaintiff has demonstrated that he is entitled to the additional discovery he seeks, having substantively complied with the requirements of the Fed. R. Civ. P. 56(d). Courts in the Second Circuit have held that the party seeking additional discovery under Fed. R. Civ. P. 56(d) "must submit an affidavit or declaration showing '(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort [the] affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *See Amto, LLC v. Bedford Asset Mgmt., LLC*, --- F. Supp. 3d ---, 2016 WL 1030141, at *13 (S.D.N.Y. Mar. 10, 2016) (quoting *Guaray v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (observing that the Second Circuit "has established a four-part test for the sufficiency" of such an affidavit).

Although Hussain has not submitted the formal affidavit generally anticipated under Fed. R. Civ. P. 56(d) in support of the pending motion, the Court, in its discretion, reads Plaintiff's Motion to Compel and Plaintiff's Rule 56.1 Statement collectively to satisfy the rule's requirements. *See Jenkins v. Elder*, No. 12-CV-4165, 2015 WL 5579699, at *1 n.2 (E.D.N.Y. Sept. 22, 2015) (citing *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (accepting plaintiff's complaint and letter response to defendants' motion for summary judgment as declarations under Fed. R. Civ. P. 56(c)(4)).

Applying these standards, Plaintiff's motion to compel is granted. Plaintiff seeks access to the Trust Agreement in order to ascertain the nature of the relationship between Defendant Sbarro

and Burton & Doyle so that he can establish that Sbarro is individually liable under FLSA and NYLL. Pl's Mtn. to Compel at 4 ("The Trust Agreement goes to the heart of the issue of Mario's Sbarro's authority to manage Burton & Doyle restaurant. . . ."). Defendants concede the document's relevance by relying on it in their motion stating, "The terms of the Trust Agreement do not grant Mario Sbarro any control or operational authority over any businesses the Trust owns, either directly or through a subsidiary, " Def. Mtn. for Summ. J. at 2, and arguing that the terms of the Trust Agreement "confirm[] that Mario Sbarro did not have the authority or power to make any decisions relating to the restaurant, including but not limited to the decision to sell it." Pl. Mtn. to Compel at 3 (quoting Def. Mtn. for Summ. J. at 11).

Further, Plaintiff's Motion to Compel details the steps he undertook to gain access to the Trust Agreement, including document requests, specific requests to defense counsel in response to initial disclosures, and then finally subpoenas served upon Sbarro's estates attorney, Montgomery. *See* Pl. Mtn. to Compel at 1. Hussain also explains that these efforts were to no avail due to the allegedly privileged status of the Trust Agreement. *See id*. at 2. Indeed, in the Protective Order all parties acknowledged as much, stating that attorney-client privilege prevented Montgomery from turning over the unredacted Trust Agreement and that he was neither authorized nor independently permitted to waive the privilege of his client, Sbarro. *See id.*

Accordingly, when read together, Plaintiff's Rule 56.1 Counterstatement and Motion to Compel satisfy the fourfold requirements of an affidavit or declaration seeking relief under Fed. R. Civ. P. 56(d) and justify Hussain's present request. Under this construction, the only remaining issue is whether Defendants' Motion for Summary Judgment in its references to and reliance upon the Trust Agreement has waived the privilege Sbarro invokes.

## C.     Waiver of Attorney Client Privilege

As set forth below, Defendant Sbarro's reliance on the Trust Agreement in his summary judgment motion waives any attorney-client privilege invoked to protect it, rendering it discoverable. Under federal law,[3] although attorney-client privilege serves the public good and the administration of justice by encouraging open and frank communication between attorneys and their clients, the privilege protects only those communications between an attorney and a client that were intended to be and actually were kept confidential. *See Upjohn Co. v. United States*, 449 U.S. 383, 393, 101 S.Ct. 677, 684 (1981), *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996). The party invoking the privilege, furthermore, bears the burden of not merely proving that it applied at some earlier point in time but also that subsequent conduct has not waived the privilege. *See In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) ("A party invoking the attorney-client privilege must show … a communication between client and counsel … was intended to be *and was in fact kept* confidential…") (emphasis added); *Crawford v. Coram Fire Dist.*, No. 12 CV 3850, 2014 WL 1686203, at *3 (E.D.N.Y. Apr. 29, 2014) (citing *Pall Corp. v. Cuno Inc.,* 268 F.R.D. 167, 168 (E.D.N.Y. 2010)) (noting that a party's partial disclosure of and/or affirmative reliance upon privileged communications places them at issue likely defeating any claim of attorney-client privilege over them).

Such a waiver need not be explicit or intentional as the attorney-client privilege may be forfeited implicitly through a party's conduct while it prosecutes its case. *See id.* Consistent with this principal, the Second Circuit has rejected as unjustly prejudicial the use of the attorney-client

---

[3] As a preliminary matter, because the wage claims at issue are filed under federal and state law, privilege issues are governed by federal common law. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441 (S.D.N.Y.1995) (citing to *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)) (holding that, since the disputed documents were evidence related both to the federal RICO claims and to the pendent state claims, privilege issues were governed by federal common law).

8

privilege as both a sword and a shield. *See Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case…"); *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) ("A client may nonetheless by his actions impliedly waive the privilege or consent to disclosure.") (internal citations omitted)). Accordingly, a party may not assert the privilege over a communication and then later make partial self-serving disclosures of the allegedly privileged material. *See Bilzerian*, 926 F.2d at 1292. Moreover, a waiver may occur even if the asserting party does not make direct use of the privileged communication itself when that party avers material facts at issue related to the privileged communication, and where the validity of those facts can only be accurately determined through an examination of the undisclosed communication. *Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, No. 97CIV.4550, 1998 WL 414933, at *1–2 (S.D.N.Y. July 23, 1998) (citing to *Bilzerian,* 926 F.2d at 1292; *In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 470 (S.D.N.Y.1996)). Under such circumstances, fundamental fairness strongly supports a finding that a waiver of attorney-client privilege has occurred. *Id.*

Applying these standards, Defendants' assertion of privilege as to the Trust Agreement is waived. Prior to the filing of the Defendants' Motion for Summary Judgment, Sbarro only disclosed seven out of 37 pages of the Trust Agreement, withholding the balance based upon a claim that it was protected under the attorney-client privilege. *See* Pl.'s Mtn. to Compel at 1; Protective Order ¶ 7. Nevertheless, Defendants' Motion for Summary Judgment contains an entire section stating in detail that Defendant Sbarro is not the owner of Burton & Doyle as memorialized in the Trust Agreement. *See* Def. Mtn. for Summ. J. at 2-3. In support of their position, Defendants attach Sbarro's testimony, portions of which addresses the Trust's ownership and control of the

restaurant, and the affidavit of Dottie Jones, a trust officer, which summarizes the provisions and structure of the Trust Agreement in a manner favorable to the defense. *See* Def. Mtn. for Summ. J. Ex. D, H. Defendants then use these assertions to argue that this undisputed lack of ownership and/or operational control is one factor the Court must consider in ascertaining whether Sbarro is an employer under the FLSA. *Id.* at 9. This is a straightforward example of use of attorney-client privilege as both a sword and a shield in a manner the case law prohibits. *See John Doe v. United States,* 350 F.3d 299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted."); *Tribune Co. v. Purcigliotti,* No. 93 CIV. 7222, 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) (noting that an implied waiver often occurs when a party makes selective use of privileged materials, "releasing only those portions of the material that are favorable to his position, while withholding unfavorable portions"); *Kidder Peabody*, 168 F.R.D. at 472–73 (holding that the party's use of the substance of the documents at issue as a sword while at the same time invoking privilege over them "triggers a waiver of the privilege for those portions of the documents that embody the substance of any statements"); *see also Overbaugh v. United States*, 483 F. Supp. 2d 223, 225 (N.D.N.Y. 2007) (citing *Bilzerian,* 926 F.2d at 1292 ; *Purcigliotti,* 1997 WL 10924, at *5-6) ("The attorney-client privilege cannot be used as both a shield and a sword, and he who holds the privilege may implicitly waive it if he asserts claims that cannot be fairly evaluated absent examination of protected communications.").

In their motion for summary judgment, Defendants have put at issue the exact nature of the relationship created and regulated by the Trust Agreement that they have claimed privilege over. Accordingly, the privilege is waived and the Trust Agreement must be produced.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel is granted and the Trust Agreement must be produced within five days of the date of this Order.

Dated: Central Islip, New York
October 18, 2016

**SO ORDERED**

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge